IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Eva Marie Manzo; Alberto Manzo Zapien[2],<br><br>    Defendants. | CR 11-01831-TUC-JGZ(HCE)<br><br>**AMENDED[1]<br>REPORT AND RECOMMENDATION**<br><br>**NUNC PRO TUNC** |

Defendant Eva Marie Manzo filed a Motion To Suppress Statements (Doc. 35) and a Motion To Suppress (Doc. 36). Defendant Alberto Manzo Zapien[2] filed a Notice Of Joinder In Co-Defendant's Motions (Doc. 37)[3]. The Court deemed joinder by all Defendants in Defendant Eva Marie Manzo's Motion To Suppress Statements (Doc. 35) and Motion To Suppress (Doc. 36). (Doc. 41). The Court originally set March 8, 2012 as the Government's response due date. (Doc. 41). Defendant Eva Marie Manzo moved to continue the motion evidentiary hearing scheduled for March 12, 2012. (Doc. 42). The Court granted Defendant

---

[1]The Report and Recommendation filed April 12, 2012 (Doc. 59) is hereby amended to clarify that the recommendations affect only Defendants Eva Marie Manzo and Alberto Manzo Zapien. The Amended Report and Recommendation also reflects that citations to Doc. 40 at p. 1, lines 21 and 22 of the original Report and Recommendation (Doc. 59) should be to Doc. 41.

[2]Defendant Alberto Manzo Zapien is also known as Alberto Z. Manzo (*see* Doc. 1) and is referred to hereinafter as Defendant Alberto Manzo.

[3]Defendant Marcos Gonzalez is presently on absconder status.

1  Eva Marie Manzo's request for a continuance and rescheduled the motion evidentiary
2  hearing to April 4, 2012 and set March 23, 2012 as the Government's response due date.
3  (Doc. 43). The Government, after its request for an extension to file its response was granted
4  (Docs. 46, 47), filed a Response To Defendant's Motion To Suppress (Doc 48) and an
5  *Amended* Response To Defendant's Motion To Suppress (Doc. 49) on March 29, 2012.

6  Defendants' Motion To Suppress (Doc. 36) came on for hearing on April 4, 2012.[4]
7  Tucson Police Department (hereinafter "TPD") Officers Andrew Allen (hereinafter "Allen
8  at p. _") and Michael Stoneham (hereinafter "Stoneham at p. _") testified on behalf of the
9  Government. Defendant Eva Marie Manzo (hereinafter "Manzo at p.__") testified on her own
10 behalf. Admitted into evidence were: (1) Defense Exhibit 20: four photographs of the rear
11 of a white 1997 Toyota Avalon driven by Defendant Alberto Manzo; (2) Defense Exhibit 25:
12 TPD Form 1302-Consent to Search; and (3) Defense Exhibits 27 and 27A: City of Tucson
13 traffic citation issued by Officer Allen to Defendant Alberto Manzo for "Stop Lamp Not
14 Working Right". A transcript of the suppression hearing was ordered, filed on April 6, 2012
15 (Doc. 58), and is forwarded to the District Court for its consideration.

16 After review of the Motion To Suppress Statements (Doc. 35) and Motion To
17 Suppress (Doc. 36), the Government's Amended Response To Defendant's Motion To
18 Suppress (Doc. 49), testimony, exhibits, and argument of respective counsel, the Magistrate
19 Judge recommends that the District Court grant Defendant's Motion To Suppress Statements
20 (Doc. 35) and Motion To Suppress (Doc. 36).

21 **I. PROCEDURAL AND FACTUAL BACKGROUND**

22 **A.   Indictment**

23 Defendants are charged with having, from a time unknown, to on or about April 19,
24 2011, at or near Tucson, in the District of Arizona, knowingly and intentionally conspiring
25 together and with other persons, to possess with the intent to distribute 5.68 kilograms of

---

[4]Because the Government does not intend to use Defendants' statements at trial (*see* Government's Amended Response to Defendant's Motion to Suppress (Doc. 49), p. 6), no evidence was presented on the Motion to Suppress Statements.

- 2 -

actual methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(A)(viii), and 846 (Count 1); and, on or about April 19, 2011, at or near Tucson, in the District of Arizona, knowingly and intentionally possessing with the intent to distribute 5.68 kilograms of actual methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §841(a)(1) and (b)(1)(A)(viii) (Count 2).  (Doc. 9).

**B.    Facts**

On April 19, 2011, Drug Enforcement Agents:

> observed suspicious behavior common of drug traffickers at the Wal-Mart parking lot located at 1650 West Valencia in Tucson, AZ. A group of individuals were observed meeting near their vehicles. The group subsequently departed the parking lot together. The vehicles then traveled westbound on Valencia road.

(Doc. 1).[5] The Drug Enforcement Agents requested TPD to stop a Toyota Avalon[6] for a traffic violation. (Allen at pp. 21, 48; Stoneham at pp. 60, 66). Officer Allen, driving an unmarked[7] police vehicle with Officer Stoneham as passenger, responded to a TPD radio dispatch in an attempt to stop a Toyota Avalon. (Allen at pp. 10, 11,12, 21) They observed a white 1997 Toyota Avalon (hereinafter "Toyota") traveling west on Valencia Road. (*Id.* at pp. 13, 21).  They both observed that the Toyota's left stop lamp was not working. (*Id.* at pp. 12, 23-24; Stoneham at pp. 60-61). They conducted a traffic violation stop of the Toyota for stop lamp violation. (Allen at pp. 29, 49; Stoneham at pp. 64, 82).

The Government and Defendants entered into a stipulation that the Toyota was examined on September 23, 2011 in respective counsel's presence (April 4, 2012 Hearing at pp. 25, 67, 86); the Toyota was "jump" started (*Id.* at p. 86); and the Toyota had been in the possession and control of the Government at an impound lot since its seizure on April 19,

---

[5]It is unknown to the Court what claimed suspicious behavior was observed.

[6]Although the Complaint refers to a Toyota Camry (Doc. 1), the testimony is that the vehicle in question was a Toyota Avalon.

[7]Officer Stoneham testified that he was a passenger in a marked police vehicle driven by Officer Allen. (Stoneham at p. 60).

2011. (*Id.* at pp. 67, 86). At the impound lot, with the Toyota motor running, the foot brake was applied (*Id.* at pp. 24, 25). Photos were taken of the right rear stop light, the back window center stop light and left rear stop light. (*Id.* at p. 86; Defense Exhibit 20). An examination of the photos indicates that the right rear stop light and the back window center stop light are *fully* functioning. (Defense Exhibit 20). The left rear stop light has one of an array of bulbs comprising the brake light, either burned out or not properly connected. (*Id.*). It is not functioning as fully as the right or center stop lights. (*Id.*).

Officer Allen approached the driver side of the Toyota (Allen at pp. 14, 15) to speak to Defendant Alberto Manzo, who is Defendant Eva Marie Manzo's father (Manzo at p. 89), while Officer Stoneham approached the passenger side to speak with Defendant Eva Marie Manzo. (Allen at p. 14[8]; Stoneham at pp. 61, 62, 71; Manzo at p. 90). Officer Allen asked Alberto Manzo for his driver's license and proof of insurance. (Allen at p. 15; Manzo at p. 91). There is no testimony that either officer informed Defendants of the reason for the stop.

Officer Allen testified that he asked both Defendants if he could search the Toyota and neither responded verbally. (Allen at pp. 16, 28, 29, 44)[9]. Officer Allen testified that without being prompted, both Defendants got out of the vehicle.[10] (*Id.* at pp. 17, 33-34, 36). Allen then asked Defendant Alberto Manzo if he understood what was being asked and that he responded "yes". (*Id.* at pp.17, 27-28, 33, 37, 42-43, 44). Allen had begun a search inside the vehicle when a canine unit soon arrived. (Allen at p. 17). The canine alerted to the presence of contraband in bags situated behind the front seats. (*Id.* at pp. 17, 18, 37, 51;

---

[8]Officer Allen testified it was he who spoke to Defendant Eva Marie Manzo on the passenger side of the Toyota. (Allen at pp. 30, 34, 38, 54).

[9]Officer Allen testified that Defendants said "yes". (Allen at p. 48). Officer Stoneham testified "I can't remember their exact words. I just know it was a yes that we could - -." (Stoneham at p. 62); "I don't recall their exact words, just that it was a yes or an okay you can search our car." (*Id.* at p. 78); "I just know at some point both gave us an affirmative to our question or to Officer Allen's question about searching their vehicle." (*Id.* at p. 80).

[10]Officer Stoneham testified he asked Defendant Eva Marie Manzo to step out of the vehicle. (Stoneham at p. 76).

- 4 -

1  Stoneham at p. 63).

2      Prior to Defendants stepping out of the Toyota, firearms were not exhibited by
3  Officers Allen or Stoneham. (Allen at p. 54; Stoneham at pp. 70, 71). They did not yell at
4  Defendants. (Stoneham at p. 64). Officers Allen and Stoneham did not physically overreach
5  in any manner prior to searching the Toyota. At no time during the search did Defendants
6  indicate that they wanted the search to cease. (Allen at p. 55; Stoneham at p. 100).
7  Defendants were not advised of their right to refuse to give consent to a search nor was TPD
8  Form 1302-Consent to Search used. (Allen at p. 40).

9  **II. ANALYSIS**

10      **A.    Motion To Suppress (Doc. 35)**

11      The Government states that it

12          does not intend to introduce any of the statements made at the
        station either in its case in chief or its rebuttal case.

13  (Amended Response To Defendant's Motion To Suppress (Doc. 49), p. 6)). The Government
14  also stated during the evidentiary hearing that such statements would not be used should
15  Defendant Eva Marie Manzo testify at trial because of issues pertaining to their
16  voluntariness. (April 4, 2012 Hearing at p. 5).  The Motion to Suppress Statements (Doc.
17  35) should be granted.

18      **B.    Motion To Suppress Evidence (Doc. 36)**

19      Factors which could cumulatively comprise reasonable suspicion by the Drug
20  Enforcement Agency to stop the Toyota are not before the Court.

21      **1.    Investigatory Stop**

22      The Fourth Amendment's protection against unreasonable searches and seizures
23  extends to brief investigatory stops of persons or vehicles shy of traditional arrest. *Terry v.*
24  *Ohio*, 392 U.S. 1, 9 (1968). Such a stop, even for a brief period, constitutes a "seizure" of a
25  "person" within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S.
26  806, 809-10 (1996). Although an officer is permitted to conduct a pretextual stop as a means
27  to uncover other criminal activity, the officer must nonetheless reasonably suspect a traffic
28

- 5 -

1 law violation. *Id.* at 812-13. The decision to make a traffic stop is reasonable "where the police have probable cause to believe that a traffic violation occurred." *Id.* at 810. Consequently, a police officer's ulterior motive does not in and of itself deprive law enforcement of otherwise lawful conduct. *See United States v. Villamonte-Marquez*, 462 U.S. 579, 584, n. 3 (1983); *Scott v. United States*, 436 U.S. 128, 136 (1978); *United States v. Robinson*, 414 U.S. 218, 221, n. 1 (1973); *Gustafson v. Florida*, 414 U.S. 260, 266 (1973).

> The fact that the alleged traffic violation is a pretext for the stop is irrelevant, so long as the objective circumstances justify the stop.

*United States v. Wallace*, 213 F.3d 1216, 1219 (9th Cir. 2000).

Officers Allen and Stoneham stopped Defendants because the left rear stop lamp "was not working" or, as stated in the citation, "stop lamp not working right". (Allen at p. 14, 24-25; Stoneham at p. 60-70; Defense Exhibit 27). Defendant Alberto Manzo was driving the Toyota in compliance with Arizona traffic statutes. Arizona Revised Statute §28-939 states in pertinent part:

> A motor vehicle may be equipped and if required under this article shall be equipped with the following:
> 1. *A* stop *lamp* on the rear that emits a red or yellow light that is actuated on application of the service or foot brake and that may be incorporated with a with a tail lamp.
> ...
> If a vehicle is equipped with *a* stop *lamp*, ... , *the lamp* ... shall:
> 1. Be maintained at all times in good working condition.

A.R.S. §28-939(A)(1) and (B)(1). (emphasis added).

The Toyota driven by Defendant Alberto Manzo with Defendant Eva Marie Manzo as a passenger, had two fully functioning stop lamps and a third stop lamp with an inoperative bulb, but nonetheless functioning. The statute under which Defendant Alberto Manzo was cited, A.R.S. §28-939(B)(1), requires but one functioning stop lamp. *See State v. Fikes*, 228 Ariz. 389, 267 P.3d 1181 (Ct. App. 2011). Officer Stoneham concedes Defendant Alberto Manzo's compliance with Arizona traffic statutes:

> Q. [Defense Counsel]: Okay. In the traffic ticket that was given to Mr. Manzo it says ["]stop lamp not working right["]. Would that maybe mean that it was working but it wasn't working correctly or to the full extent? Is that something you would say

>     instead of said it's just not working at all?
>     A. [Officer Stoneham]: Correct.

(Stoneham at p. 69-70).

Herein, one of three stop lamps was not fully functioning, i.e., not all bulbs were operative, but it did function such that it was plainly visible and discernible when seen from behind. *See* A.R.S. §28-939(B). Furthermore, the Toyota had two more than the minimally statutorily required one, fully functioning stop lamps. No testimony was offered by the Government that Officers Allen's and Stoneham's observation of the left rear stop lamp when following the Toyota, was not discernible when the foot brake was applied or that it affected traffic in any way. There was no testimony that Defendant Alberto Manzo committed traffic violations while he was observed driving the Toyota. *See e.g., United States v. Mariscal*, 285 F.3d 1127, 1131 (9th Cir. 2002)(regarding the failure to use signal lamps to justify a *Whren* stop: "Plainly, if a violation was to be suspected, there must have been traffic, and there must have been some possibility that the traffic would be 'affected by the movement' of the [vehicle] ....").

Officers Allen and Stoneham were under a mistaken understanding and belief that Arizona law permitted them to stop and cite a driver if *any one of a number* of stop lamps on a vehicle appeared to be "not working right."

>     In other words, if an officer makes a traffic stop based on a
>     mistake of law, the stop violates the Fourth Amendment.

*United States v. Twilley*, 222 F.3d 1092, 1096 (9th Cir. 2000)(California police under mistaken belief that vehicle observed with one Michigan license plate was in violation of Michigan law believed to require two). The Government opines that Officers Allen and Stoneham held a mistaken view of the law in good faith. However:

>     [T]here is no good-faith exception to the exclusionary rule for
>     police who do not act in accordance with governing law.

*United States v. Lopez-Soto*, 205 F.3d 1101, 1106 (9th Cir. 2000). Defendant Alberto Manzo was driving the Toyota in conformity with the law.

- 7 -

**2.     Consent**

If an illegal search or seizure occurred, consent to search is generally invalid. *See Florida v. Royer*, 460 U.S. 491, 501-08 (1983)(consent to search luggage invalid, subsequent to confinement constituting arrest without probable cause, during airport interrogation). The government bears the burden of proof to establish the existence of effective consent. *Royer*, 460 U.S. at 497. Mere submission to a claim of lawful authority does not show consent. *See Kaupp v. Texas*, 538 U.S. 626, 631 (2003)(17-year-old's agreement to talk with officers who entered room in middle of night to talk about murder investigation was not showing of consent). Moreover, consent obtained after an illegal arrest, is the product of undue coercion. *See Bumper v. North Carolina*, 391 U.S. 543, 548 (1968).

Herein, the testimony is unclear whether consent was expressly given by either Defendant Alberto Manzo or Defendant Eva Marie Manzo. According to Officer Allen, neither Defendant said anything, but rather, stepped out of the Toyota.  Yet, Officer Allen, as well as Officer Stoneham, also testified that an affirmative response was given by Defendants at which time both Defendants stepped out of the Toyota. In either instance, one may argue that consent was minimally implied by Defendants stepping out of the Toyota. Before doing so, Defendants did not suggest in any way that drugs might be secreted in the vehicle. *See United States v. Rodriguez-Preciado*, 399 F. 3d 1118, 1131 (9th Cir.)(consent to search car implied by defendant's admission that drugs could be found behind car speakers), *amended by* 416 F.3d 939 (9th Cir. 2005). Nor can the Government show consent by Defendants' failure to object to the search.

> Even if there was not implicit coercion in fact here, the government may not show consent to enter from the defendant's failure to object to the entry. To do so would be to justify entry by consent and consent by entry.

*United States v. Shaibu*, 920 F.2d 1423, 1428 (9th Cir. 1990).

Consent to search, in order to be valid, must be given sufficiently attenuated from an illegal arrest. *United States v. Washington*, 490 F.3d 765, 775 (9th Cir. 2007)(consent to search invalid because police officer requested such, immediately after illegal seizure of

- 8 -

1 defendant). Herein, the dispatch call originating from the Drug Enforcement Administration to stop the Toyota occurred at approximately 3:00 p.m. (Allen at pp. 13, 21). The traffic citation was issued at 3:33 p.m. (*Id.* at p. 48). Consent alleged to have been given to search and the ensuing search of the Toyota, occurred in the intervening half-hour.

The Government has not met its burden to establish the existence of effective consent in that intervening half-hour. The Government presented evidence: (1) that the Toyota was stopped; (2) that Defendant Alberto Manzo was then asked for his driver's license and proof of insurance; (3) that neither Defendant Alberto Manzo nor Defendant Eva Marie Manzo, were advised of the reason for being stopped, *i.e*., a traffic violation; and (4) Officer Allen's *de facto* reason for the stop: may he search the car. Under these circumstances, the consent to search subsequent to the illegal seizure as described in II.B.1., *supra*, was not sufficiently attenuated and renders any consent given invalid.

The Government has the burden to show that the consent given by Defendants Alberto Manzo and Eva Marie Manzo was given voluntarily. In the examination of the totality of the circumstances, no single factor is dispositive. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973).

Defendants were not told by Officers Allen or Stoneham that they sought to search the Toyota in their belief there was contraband in the Toyota. Defendants, in turn, did not indicate by way of attitude that there was a likelihood of discovering contraband in the Toyota. *United States v. Todhunter*, 297 F.3d 886, 891 (9th Cir. 2002)(consent to search cabin voluntary because defendant pointed to areas where police would find firearms and drugs). The government's burden "cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper*, 391 U.S. at 548-49. The stop, request for driver's license, failure to advise of the reason for the stop, and request to search the vehicle was law enforcement's implicit claim of lawful authority resulting in an acquiescing submission to same by Defendants' stepping out of the vehicle. *United States v. Stephens*, 206 F.3d 914, 917018 (9th Cir. 2000)(consent not voluntary if made in acquiescence to claim of lawful

1  authority or misrepresentation of lawful authority when non-uniformed[11] police announced
2  to passengers on bus: "Good morning, ladies and gentlemen. We're police officers from
3  various agencies. We're conducting a routine narcotics and weapons investigation on the bus.
4  No one is under arrest[12], and you are free to leave[13]. However, we would like to talk to you.
5  Thank you."). Neither Defendant was advised that he or she had a right not to consent.
6  *Washington*, 490 F.3d at 776 ("it is undisputed that neither [police officer] explained to
7  [defendant] that he could refuse to consent to the search of his car, so this factor favors
8  [defendant]."). The "temporal proximity" of the consent does not purge the taint of the illegal
9  seizure and Defendants' consent - whether implied or expressed - was involuntary. *Id.*

## III. CONCLUSION

Officers Allen and Stoneham made a traffic stop based upon a mistake of law and consequently, the stop was an illegal seizure of Defendants; the consent given by Defendant

---

[11]Officers Allen and Stoneham were dressed in plain clothes. (Allen at p. 11; Stoneham at p. 60).

[12]Q. [Government]: Okay. When they were asked for consent, were they under arrest?
   A.[Officer Stoneham]: No.
Mr. Bartolino: I'd object to legal conclusion.
THE COURT: Overruled.
(Stoneham at p. 65).

[13]Q. [Government]: Did you not ask them not only get out of the vehicle but direct them to a place where they should stay while you searched the car - -
   A. [Officer Allen]: Once they got out of the vehicle - - I did not tell them to get out of the vehicle. I asked if they would consent to a search. They exited the vehicle and I had them stand on the - -
   Q. Okay.
   A. - - north side of the roadway, the north side of the vehicle- -
   Q. You told them where to go; is that correct?
   A. They - -
   Q. Didn't you tell - -
   A. No, I did not tell them where to go. *Once I started searching the car I did.*
   Q. *When they got out of the vehicle, they could have just walked of then, right?*
   A. *No, I would have - - I probably would have stopped them.*
(Allen at pp. 36-37)(emphasis added).

- 10 -

was contemporaneous and not sufficiently attenuated to the illegal seizure of Defendants; the consent given by Defendants was not voluntary: in every instance a violation of the Fourth Amendment.

### IV. RECOMMENDATION

The Magistrate Judge recommends that the District Court grant Defendant's Motion To Suppress Statements (Doc. 35). The Magistrate Judge recommends that the District Court grant Defendant's Motion To Suppress (Doc. 36).

Pursuant to 28 U.S.C. §636(b) and Rule 59 of the Federal Rules of Criminal Procedure, LRCrim 12.1 and LRCiv 7.2(e)(3), any party may serve and file written objections within ten days after being served with a copy of the Report and recommendation. If objections are filed, the parties should use the following case number: **CR 11-01831-TUC-JGZ**.

Failure to file objections in accordance with Fed.R.Cr.P. 59 will result in waiver of the right to review.

IT IS ORDERED that this Amended Report and Recommendation shall be filed *nunc pro tunc* as of April 12, 2012.

DATED this 3rd day of May, 2012.

_____
Héctor C. Estrada
United States Magistrate Judge